UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:22-CV-00119-JHM

**GRANITE STATE INSURANCE COMPANY**                                              **PLAINTIFF**

**V.**

**KENNETH TAYLOR, LEE BOWLES, and**
**J. TODD P'POOL**                                                                                    **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Granite State Insurance Company's motion to dismiss Defendants Kenneth Taylor and Lee Bowles's counterclaim. [DN 20; DN 11]. Fully briefed, this matter is ripe for decision. For the following reasons, Granite State's motion is **GRANTED**.

### I. BACKGROUND

This case is an action by Granite State Insurance Company ("Granite State") to enforce a judgment this Court entered against Star Mine Services, Inc. ("Star Mine") over a year ago. *See Granite State Ins. Co. v. Star Mine Servs., Inc.*, 553 F. Supp. 3d 413 (W.D. Ky. 2021) [hereinafter *Granite State I*], *aff'd*, 29 F.4th 317 (6th Cir. 2022). Star Mine is a now-defunct Kentucky coal mine staffing company owned and operated as a closely held corporation by Kenneth Taylor, Lee Bowles, and J. Todd P'Pool (collectively "Defendants"). [DN 11 at ¶ 2]. Kentucky law required Star Mine to purchase workers' compensation insurance to cover its employees. [*Id.* at ¶ 2]. From February 1 through November 6, 2018, Star Mine obtained this necessary coverage from Granite State. [*Id.* at ¶ 3; DN 1 at ¶¶ 8, 16].

In *Granite State I*, the Court explained how the two companies' insurance contract ("the Policy") worked and outlined the dispute that gave rise to both that case and this case:

The parties' insurance contract describes how the premium payments worked. [DN 1-2]. Granite State issued an insurance contract to Star Mine at the start of each policy period. The contract detailed all aspects of Star Mine's insurance coverage. It did not, however, specify the final premium that Star Mine owed Granite State. Instead, the parties used Star Mine's anticipated payroll to estimate a premium payment. [DN 1-2 at 9; DN 53-1 at 1–2, ¶ 3]. Granite State did not calculate the final premium until the end of the year: the contract stipulated that "[t]he final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy." [DN 1-2 at 9, Part 5(E)]. Although the initial premium was merely an estimate, Star Mine was responsible for paying that estimated premium immediately. The parties then settled the discrepancy at the end of the year, once Granite State audited Star Mine's records and tabulated the actual calculations. [*Id.*; *see also* DN 52-12 at 31:24–32:5].

Star Mine estimated its payroll at $2,467,687 for the 2018 policy. [DN 1-2 at 12, 14, 16]. Based on this estimate, Granite State issued an insurance contract with an estimated premium of $646,744. [*Id.*]. Star Mine paid that premium. Midway through the policy period, however, Granite State completed its audit of Star Mine's 2017 policy. The audit revealed that Star Mine had underestimated its payroll by roughly thirty percent, necessitating a $302,713 end-of-year reconciliation payment. [DN 53-1 at 2 ¶ 4]. Star Mine had significantly underestimated its payroll for the 2016 policy as well. [*Id.*]. Recognizing Star Mine's trend of underestimating its payroll at the start of the year (and thus reducing its initial insurance premium payment), Granite State acted proactively for the 2018 policy—it issued a mid-year policy "endorsement" to Star Mine. [DN 53-1 at 83–95]. The endorsement recalculated Star Mine's estimated 2018 premium based on its actual 2017 payroll, not Star Mine's "anticipated" 2018 payroll. [*Id.* at 2 ¶ 6; *id.* at 83]. The recalculated premium was $992,187, $345,443 higher than the estimated premium Star Mine paid at the start of the year. [*Id.* at 83]. Granite State gave Star Mine four weeks to pay the added premium. [*Id.* at 2 ¶ 6]. Star Mine did not pay, so Granite State cancelled the policy on November 6, 2018. [DN 24-1]. Star Mine simultaneously shut down business operations. [DN 38-3 at 3 (contemporaneous notes from Star Mine's insurance agent, explaining that Star Mine moved all its employees to another company the same day Granite State cancelled the policy)].

After Granite State cancelled the policy and Star Mine closed its business, Granite State attempted to conduct its end-of-policy audit. In January 2019, a Granite State auditor contacted Star Mine executives, notifying them of the audit and describing the information they needed to provide. [DN 53-1 at 97]. The executives ignored the email; they also ignored several subsequent attempts to schedule the audit. [*Id.* at 100–101 (letter detailing eight attempts to contact Star Mine executives or Star Mine's insurance agent)]. Granite State warned Star Mine that audit noncompliance would result in (a) an estimated premium based on prior year estimates and (b) an audit noncompliance charge. [*See id.* at 107–108].

The audit noncompliance charge was especially harsh. It allowed Granite State to charge two times the total premium for all its Illinois and Kentucky payroll if Star Mine did "not allow [Granite State] to examine and audit all of [its] records that relate to this policy, and/or do not provide audit information as requested." [DN 1-2 at 29]. The audit noncompliance provision was included in the original insurance contract, and Granite State again warned Star Mine of this provision while it attempted to conduct the audit. [DN 53-1 at 108].

2

> A Star Mine executive eventually sent over some, but not all, of the required information. [*Id.* at 116]. Granite State attempted to track down the remaining information, to no avail. [*Id.*]. So after two months, dozens of emails and phone calls, and several extensions, Granite State finally marked the audit noncooperative. It estimated Star Mine's payroll based on its 2017 policy year numbers, discounted by the twelve weeks that the 2018 policy was not effective. It also charged the two-times audit noncompliance charge—$499,880 for Star Mine's Illinois employees and $722,038 for its Kentucky employees. [DN 1–3 at 4, 10]. Adding up these totals, Star Mine was charged $1,139,880 on top of the $345,443 already outstanding—a total of $1,485,323. [*Id.* at 11]. Granite State sent a demand letter to Star Mine [DN 1-4], but Star Mine apparently never responded. A few months later, Granite State sued for breach of contract. [DN 1].

*Granite State I*, 553 F. Supp. 3d at 415–16 (citations are to that case's record).

Granite State went on to win its lawsuit, as the Court granted its motion for summary judgment and ordered Star Mine to pay it $1,366,378 plus interest. *Id.* at 424. But Granite State says that it has yet to see a dime of that money. [DN 1 at ¶ 23]. Defendants voted to sell Star Mine to another company and dissolve the corporation shortly after Granite State cancelled the Policy. [*Id.* at ¶¶17, 20]. Granite State alleges that Defendants distributed the profits from that sale amongst themselves without any intention of paying their company's debt to Granite State. [*Id.* at ¶¶ 16, 19]. Because Star Mine has not conducted any business since the sale and dissolution, the sale proceeds were the only corporate funds Star Mine could have used to pay this Court's judgment. [*Id.* at ¶ 19].

Unable to get any money from Star Mine, Granite State sued Defendants as individuals, seeking to pierce the corporate veil and void Star Mine's transfers of its funds to its three shareholders. [DN 1]. Mr. Taylor and Mr. Bowles counterclaimed, alleging that Granite State breached the Policy when it cancelled it in November 2018. [DN 11]. Mr. P'Pool has not appeared in this case, and the Court entered a default judgment against him on February 13, 2023. [DN 22]. (From this point forward, "Defendants" references only Mr. Taylor and Mr. Bowles.)

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs," *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true," *id.*, and determine whether the "complaint . . . states a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. Instead, "a complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Id.* at 663 (quoting Fed. R. Civ. P. 8(a)(2)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

If "matters outside the pleadings are presented to and not excluded by the court" when ruling upon a motion under Rule 12(b)(6), the Federal Rules require that "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). This Rule does not require the Court to convert a motion to dismiss into a motion for summary judgment every time the Court reviews documents that are not attached to the complaint. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). "[W]hen a document is referred to in the complaint and is

4

central to the plaintiff's claim . . . [,] the defendant may submit an authentic copy [of the document] to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Id.* (quotation omitted).

Because both the Policy, [DN 20-1], and Granite State's cancellation notice to Star Mine, [DN 20-2], are mentioned in Defendants' counterclaim and are essential to their theories for recovery, the Court will consider those documents even though the documents themselves were first attached to Granite State's motion. *See id.*; [DN 11 at ¶¶ 3, 12–14].

### III. DISCUSSION

Granite State put forward two grounds for granting its motion to dismiss the Counterclaim: The Defendants lack standing to sue as individuals for breach of the Policy, and they failed to state a claim for breach of contract. Both grounds are meritorious.

*A. Defendants Lack Standing to Sue for Breach of the Policy*

"Article III standing is a question of subject matter jurisdiction properly decided under [Federal Rule of Civil Procedure] 12(b)(1)." *Am. BioCare Inc. v. Howard & Howard Att'ys PLLC*, 702 F. App'x 416, 419 (6th Cir. 2017). In diversity cases, the question of whether a nonparty to a contract has standing to sue for breach is a matter of state law. *Miree v. DeKalb County.*, 433 U.S. 25, 29–33 (1977).

In Kentucky, "no stranger to a contract may sue for its breach unless the contract was made for his benefit." *Sexton v. Taylor County*, 692 S.W.2d 808, 810 (Ky. Ct. App. 1985). A third party who incidentally benefits from the contract cannot sue; "[o]nly a third-party (*sic*) who was intended by the parties to benefit from the contract, namely, a donee or a creditor beneficiary" may do so. *Presnell Construction Managers, Inc.* v. *EH Construction, LLC*, 134 S.W.3d 575, 579 (Ky. 2004). "One is a donee beneficiary if the purpose of the promisee in buying the promise is to make

a gift to the beneficiary. A person is a creditor beneficiary if the promisee's expressed intent is that the third party is to receive the performance of the contract in satisfaction of any actual or supposed duty or liability of the promisee to the beneficiary." *Id.* at n.12 (quoting *Sexton*, 692 S.W.2d at 810) (internal quotation marks omitted). Ordinarily, a shareholder is not an intended beneficiary of a corporation's contracts and does not have a personal right to sue to enforce them; the breach of contract is considered an injury to the corporation itself, not the shareholders. *See Funk v. Limelight Media Grp., Inc.*, No. 1:06-cv-72-M, 2006 WL 2983058, at *6 (W.D. Ky. Oct. 16, 2006) (applying Kentucky law); *Stewart Coach Indus. v. Moore*, 512 F. Supp. 879, 888 (S.D. Ohio 1981) (citing 18 AM. JUR. 2D CORPORATIONS § 486) ("It is well settled that shareholders have no personal interest in the property of the corporation, including the corporation's contract rights."). Rather, "[a] suit for damages arising from an injury to the corporation can only be brought by the corporation itself or by a shareholder derivatively if the corporation fails to act, since only the corporation has an action for wrongs committed against it." *Funk*, 2006 WL 2983058, at *6 (quoting *Gaff v. Fed. Deposit Ins. Corp.*, 814 F.2d 311, 315 (6th Cir. 1987)). In a recent Kentucky case, one of just two members of an LLC sued in her individual capacity for the breach of a contract between the company and its disability insurance provider. *Mattson v. Nw. Mut. Life Ins. Co.*, No. 2019-CA-1095-MR, 2020 WL 7090519, at *1 (Ky. Ct. App. Dec. 4, 2020). The court affirmed her claim's dismissal because while the company had privity of contract with the insurer, its constituent members did not. *Id.* at *2.

Here, Defendants lack standing to sue for breach of the Policy because it is only between Granite State and Star Mine. [DN 20-1]. Neither Defendant is a party to the contract; they are only mentioned in it once to make clear that they are Star Mine's officers and are not covered by the Policy. [*Id.* at 22]. They also are not third-party beneficiaries, as there is no allegation that

6

Defendants were to receive a gift from or the performance of either party to the Policy. *See Presnell*, 134 S.W.3d at 579 n.12. The ones entitled to Granite State's performance were injured Star Mine employees, a group from which the Policy specifically excluded Defendants. [DN 20-1 at 22]. And the only harm Defendants allege occurred was Star Mine's decrease in value. [DN 11 at ¶ 19]. This harm is to the corporation, and only the corporation, not its shareholders, may sue to remedy it. *See Funk*, 2006 WL 2983058, at *6. As in *Mattson*, where the LLC member lacked standing to sue as an individual for breach of a contract she was not a party to, Defendants lack standing to sue for breach of the Policy because they are not parties to it. *See Mattson*, 2020 WL 7090519, at *2.

      Defendants contend that they have standing because their injuries are "separate and distinct" from Star Mine's. [DN 21 at 4]. They argue that only the shareholders, and not the corporation, were harmed by Granite State's alleged breach of contract, triggering the exception that allows shareholders to sue as individuals. [*Id.*]; *see Gaff*, 814 F.2d at 315; *2815 Grand Realty Corp v. Goosecreek Energy, Inc.*, 656 F. Supp. 2d 707, 716 (E.D. Ky. 2009). But Defendants' own words undermine their argument. They say the "shareholders . . . are the real parties in interest who suffered actual harm, namely the loss of approximately $1,000,000.00 *in business value* . . . ." [DN 21 at 4–5 (emphasis added)]. Defendants admit that any financial loss they personally suffered stems directly from a financial loss to the corporation they owned stock in. Far from being separate and distinct, Defendants' and Star Mine's harms are one and the same. Indeed, "[a] depreciation or diminution in the value of a shareholder's corporate stock is generally not recognized . . . as the type of direct, personal injury which is necessary to sustain a direct cause of action." *Gaff*, 814 F.2d at 315 (citing numerous cases); *see also Miller v. First Fed. Sav. Bank*, No. 3:13-CV-206-JHM, 2013 WL 7155076, at *4 (W.D. Ky. Nov. 19, 2013) (granting motion to

7

dismiss direct claims by shareholders because their alleged injury "simply derive[d] from that of the diminution in the value of their membership interests.").

### B. Defendants Failed to State a Claim for Breach of Contract

The Court need not discuss the counterclaim's merits because Defendants lack standing, but it elects to do so in the interest of thoroughness. Defendants advance two theories for recovery from Granite State for breach of contract. Both theories fail as a matter of law.

Their first theory is that Granite State breached the contract by demanding that Star Mine pay a premium in the middle of the policy year when payments were only required "at the beginning of the policy, and the end of the policy." [DN 21 at 2]. But a breach-of-contract claimant "must identify a 'contractual basis' for the claim, including the specific terms of the contract allegedly breached." *Nationwide Mut. Fire. Ins. Co. v. Castle*, Civil No. 13-25-ART, 2013 WL 5503056, at *3 (W.D. Ky. Oct. 2, 2013) (citing *Northampton Rest. Grp. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012)). Defendants have failed to point to any Policy provision that says Granite State could only ask for payments at specific times. And this Court already ruled in *Granite State I* that Granite State's premature "demand for payment" was not a demand for new payment at all. Granite State asked for additional money after it determined that Star Mine likely understated its 2018 payroll and underpaid Granite State at the beginning of the policy period, something the Policy specifically allowed for. *Granite State I*, 553 F. Supp. 3d at 423 n.6; [DN 20-1 at 9–10].

Defendants' second theory is that Granite State breached the Policy by failing to provide proper notice before cancelling it. But the Policy specified that Granite State only had to provide fourteen days of notice before cancelling it, and Granite State's cancellation notice shows that it gave Star Mine almost three weeks of notice before the cancellation went into effect on November

6, 2018. [DN 20-1 at 47; DN 20-2 at 2]. The record plainly shows that Granite State gave contractually sufficient notice, and Star Mine offers not rebuttal or counterargument. *See Humphrey v. U.S. Attorney Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008) (failure to respond to an argument raised in a motion to dismiss constitutes a waiver of any counterargument).

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Granite State's motion to dismiss, [DN 20], is **GRANTED**.

Joseph H. McKinley Jr., Senior Judge
United States District Court

April 19, 2023

cc: Counsel of record